YARRUT, Judge.
This is an appeal taken by the Administrator of the Succession of original Defendant, now deceased, from a judgment in favor of Plaintiffs, signed December 1, 1954, for $6,250, with recognition of their writ of attachment and garnishment, and the lien and privilege resulting therefrom. The property seized was a $1,125 cash deposit belonging to deceased in a New Orleans bank.
This suit was instituted in 1950 against deceased Defendant, Agnes W. Smith, and the attachment was levied on the ground she was a non-resident. The suit was in personam for loss suffered by Plaintiff resulting from Defendant’s fraudulent conduct. The matter remained on the docket awaiting trial to the time she died in New Orleans, January 10, 1953, and her succession was opened February 24, 1953, in the Civil District Court for the Parish of Orleans. The Administrator of her succession was made a Party-Defendant, and the suit prosecuted against him to judgment, signed December 1, 1954.
In his judgment the District Judge decreed :
“ * * * that the writ of attachment and garnishment issue herein be maintained, and the lien and privilege resulting therefrom be recognized, and the National American Bank of New Orleans, garnishee herein, be ordered to pay to plaintiffs * * * the. sum of $1,125.00, to be applied to the payment of plaintiff’s judgment.”
Later, in reviewing the case in dismissing a motion for an increased suspensive appeal bond, he observed:
“The judgment which was rendered in this case liquidated and fixed the claim of the plaintiffs at $6,250.00, interest and costs, with recognition of the attachment and garnishment of the $1,125.00 in the National American Bank, which said funds aré under the control and in the custody of the court by reason of the attachment and garnishment in this case. Further, these funds can only be paid out or distributed by the Administrator through the orderly administration in the succession proceedings and the said judgment cannot be paid except as provided by Article 987 of the Code of Practice. This article of the Code of Practice provides that a creditor who has obtained a judgment can only obtain payment of it concurrently with other creditors of the succession, unless it be such a privileged claim as to be paid without delay. While the court has recognized the attachment and garnishment, it is not such a privileged claim as should be paid without delay, notwithstanding the fact that the judg- *300 ament does order the National American Bank to pay the plaintiffs $1,125.-00 attached in said bank.
“See also Succ. of Rabb [La.App.], 193 So. 268, Anderson[’s Adm’r] v. Birdsall, 19 La. 441, Succession of Irwin, 33 La.Ann. 63, Maxwell-Yerger Co. v. Rogan, 125 La. 1 [51 So. 48].”
All parties concede there is but one issue on appeal, namely, whether the judgment properly gives Plaintiffs a privilege on the attached fund in preference and priority over the succession debts, to-wit, law charges, burial costs, and expenses of last illness, etc. There is no contention that the judgment on the merits is erroneous.
The record clearly shows that, while deceased was a non-resident when suit was filed and attachment levied in 1950, she subsequently moved to New Orleans (two years prior to her death) and established a residence with her brother, who lived there since 1943. She was a patient in a New Orleans hospital, where she had a limb amputated, later passing away. Her succession proceedings recite that she was a resident of New Orleans at the time of her death. An inventory therein discloses that her sole asset is the $1,125 seized under the attachment.
The Administrator contends the attached fund should be administered in the succession proceeding and Plaintiffs’ judgment ranked therein, contradictorily with all other asserted claims. In support of his contention the Administrator cites the then applicable Louisiana Code of Practice, Art. 987:
“But the creditor who has 'Obtained such judgment, or the acknowledgment of his debt, can only obtain the payment of it concurrently with the other creditors of the succession, unless it be such a privileged claim as ought to be paid without delay.”
Where the suit establishing the claim has already been decided, the claimant can only demand that he be paid in accordance therewith, in due course of administration out of the funds of the estate. Succession of Bingay, 22 La.Ann. 101; Succession of Irwin, 33 La.Ann. 63.
The above quoted Article of the old Code of Practice, applicable here, is now Art. 3247 of the new LSA-Code of Civil Procedure (adopted January 1, 1961), reading:
“Execution shall not issue against any property of a succession under administration to enforce a judgment against the succession representative, or one rendered against the deceased prior to his death.”
LSA-Civil Code Art. 3276 provides:
“The charges against a succession, such as funeral charges, law charges, lawyers’ fees for settling the succession, the thousand dollars secured in certain cases to the widow or minor heirs of the deceased, and all claims against the succession originating after the death of the person whose succession is under administration, are to be paid before the debts contracted by the deceased person, except as otherwise provided for herein, and they are not required to be recorded.”
LSA-C.C. Art. 3191 enumerates and ranks the general privilege on all movables in the order of (1) Funeral charges, (2) Law charges, (3) Charges, of whatever nature, occasioned by the last sickness, concurrently among those to whom they are due; etc.
LSA-C.C. Art. 3252 enumerates and ranks the general privileges on both movables and immovables as follows: (1) Funeral charges, (2) Judicial charges, (3) Expenses of last illness; etc.
LSA-C.C. Art. 3254 provides that special privileges prime general privileges on movables. Hence, the special succession privileges should prime the general privilege resulting only from plaintiffs’ attachment *301 proceeding, and not from any antecedent contractual or statutory right.
In Succession of Holbert, 3 La.Ann. 436, our Supreme Court held that the privilege acquired by a creditor (under Art. 722 of the Code of Practice) by the seizure of real or movable property of his debtor under a fieri facias, must be postponed, in case of the subsequent death of the debtor, to those for funeral and law charges and for the expenses of the last illness of the debt- or; but the movables of the succession must first be exhausted.
A case directly in point is Collins v. Duffy, 7 La.Ann. 39, wherein the Supreme Court stated:
“The attachment gives no privilege upon the property attached, and in case of the death of the debtor and the appointment of an administrator in this State, the law directs it to be administered as we have stated. We do not deem it necessary to decide what would have been the effect of the attachment, if the defendant had actually been a non-resident and had died out of the State.
“It has indeed been often held that process of attachment subjects the property attached to the payment of the attaching creditor. But the principle supposes that the debtor has the possession of his other property for his other creditors * *
See also Succession of Holbert, 3 La.Ann. 436.
.From the above quotation Plaintiffs contend that a different situation would have resulted if the Defendant had actually been a non-resident, and had died out of the State.
As the record here clearly shows that deceased Defendant was a resident of New Orleans at the time of her death, passed away in the City, and her succession opened and the Administrator appointed in New Orleans, Collins v. Duffy, supra, must control, since it has never been modified or overruled.
Plaintiffs’ attachment and garnishment was purely ancillary, as the law permits property of an absentee to be attached and held in custodia legis to await the final outcome of the litigation, to assure its availability to satisfy any judgment that might result. The attachment was not to protect any pre-existing mortgage, or assignment of the funds, nor were they impressed with any trust in favor of the Plaintiffs.
While the judgment may have the effect of giving Plaintiffs a privilege over ordinary creditors in the distribution of the estate (which we do not decide at this time) the judgment should not give Plaintiffs a privilege outranking the succession debts outlined in Art. 3276 of the LSA-Civil Code, cited supra. Special privileges prime general privileges on movables. LSA-C.C. Art. 3254.
The parties in oral argument agreed that the succession is hopelessly insolvent, but this fact would not prevent Plaintiffs being paid pro tanto, in preference to claims other than the privileged claims referred to above, since there may well be a balance remaining after payment of the privileged claims.
For the reasons assigned, the judgment of the District Court will be affirmed to the extent only that it awards judgment on the merits in favor of Plaintiffs, with recognition of the attachment. Otherwise it is set aside, and the matter remanded to the District Court to be disposed of in the succession proceedings, to be ranked with all other debts of the deceased, according to law, and in conformity with the views herein expressed; the costs in both Courts to await final determination.
Affirmed in part, set aside in part, remanded.